# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVIA MELGOZA,<br><br>           Plaintiff,<br><br>      v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br><br>           Defendant. | 1:10-cv-00812 GSA<br><br>**ORDER REGARDING PLAINTIFF'S<br>SOCIAL SECURITY COMPLAINT** |

## BACKGROUND

Plaintiff Sylvia Melgoza ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income benefits pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (*See* Docs. 8 & 9.)

1

**FACTS AND PRIOR PROCEEDINGS[2]**

On September 29, 2006, Plaintiff filed an application for supplemental security income benefits, alleging disability as of August 29, 2006. AR 51-53. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 36, 41-50. ALJ Stephen W. Webster held a hearing on April 11, 2008, and issued an order denying benefits on June 17, 2008, finding Plaintiff was not disabled. AR 16-25. On March 25, 2010, the Appeals Council denied review. AR 5-8.

**Hearing Testimony**

ALJ Webster held a hearing on April 11, 2008, in Fresno, California. Plaintiff appeared and testified; she was represented by attorney Melissa Proudian. Vocational Expert ("VE") Cheryl Chandler also testified. AR 335-359.

Plaintiff was thirty-one years old on the date of the hearing. AR 338. She did not graduate from high school or obtain a GED.[3] The highest grade she completed was the ninth or tenth grade. AR 339. Following a workers' compensation claim, Plaintiff attended a computer school where she earned a certificate in administrative assistance. AR 339-340. She does hold a valid driver's license and drives "less than daily." AR 338-339.

When she was asked about her last job, Plaintiff indicated it was with the Ninety-Nine Cent Store, but she could not recall a date. AR 340. When asked about her employment within the last fifteen years, Plaintiff indicated she had been employed by Wal Mart, Taco Bell and Dairy Delight. AR 340-341. While employed at Wal Mart, Plaintiff performed the duties of a "stocker" and estimated the heaviest weight she lifted was approximately fifty to sixty pounds. AR 341. While employed at Wal Mart, Plaintiff kept to herself and did not associate with her coworkers, and was never reprimanded for her job performance. AR 342. However, she began to suffer from depression and stress, and she did not want to go to work any longer. She did not quit or get terminated however, rather, she was injured on the job. AR 341. Plaintiff suffered

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] "GED" refers to General Educational Development or General Education Diploma.

2

1   from carpal tunnel in the wrist, and while she could not recall the date of injury or the date of
2   settlement of the resulting workers' compensation action, she did recall that "medical [care
3   remained] open for five years." AR 341-342.
4         Plaintiff does not believe she could work any job for eight hours a day, five days a week,
5   as a result of her depression and stress. AR 342. Additionally, she identified suicidal tendencies,
6   anxiety and auditory hallucinations as problems that would prevent her from employment. AR
7   342.
8         With specific regard to depression, Plaintiff indicated she is depressed every day and it
9   affects her ability to function at home. AR 343. She takes medication for depression, however,
10  it does not help. She feels as though she is getting worse everyday. As a result of her depression,
11  she has gained ten to fifteen pounds. AR 343. Plaintiff currently stands five feet, two inches tall,
12  and weighs about 250 pounds. AR 340. Dr. David Cardona is her treating physician, whom she
13  sees about once a month. AR 344, 353. Plaintiff has also been treated by psychiatrists at Fresno
14  County Mental Health, however, none of them helped her. AR 344-345.
15        The auditory hallucinations Plaintiff hears everyday are a man's voice, telling her that she
16  is ugly and fat, and to hurt herself and others. AR 345. She has tried to block the voices by
17  using earphones or keeping busy by cleaning, however, the voices just continue. AR 345.
18  Plaintiff also suffers from visual hallucinations because she sees a shadow of a person everyday;
19  no one else can see the shadow.  AR 348. The shadow makes her angry and upset and causes
20  her to cry and shake with nervousness. AR 348, 355.
21        Plaintiff sees her therapist one or twice per week. AR 345-346. Plaintiff believes her
22  therapist understands her and she has made "a little bit, [but] not too much" progress, yet she
23  continues to work on it. AR 350. Plaintiff continues to feel suicidal about three or four times a
24  week, and has acted upon the impulse on three or four occasions. AR 346. The last time she
25  attempted suicide was 2006. On that occasion, she "saw a shadow which was the person in [her]
26  past [and heard] voices at the same time." AR 346. She locked herself in her room and began
27  breaking items. When she broke a large mirror, the mirror shattered and she used a piece of glass
28

to cut her arms. AR 346. Her roommate called 911 and Plaintiff was admitted to the PACT[4] unit. Plaintiff admitted using drugs about five or six years ago, but she is currently clean and sober. AR 353-354.

When she was asked about hobbies or interests, Plaintiff indicated that she "lost all that" and does not "believe in friends" because they have betrayed her. She does however have a boyfriend with whom she gets along. AR 348-349. Plaintiff does cook and clean, but only on those days she is able to get out of bed. She estimated she cooks and cleans about twice and week and stays in bed the other four to five days for six to eight hours or more. AR 349. That had been the case even prior to August of 2006. AR 350. Plaintiff's sister does the grocery shopping for her.[5] AR 353. She does not read, go to the movies, attend church or visit with friends and family. AR 353. While the television may be on, Plaintiff is not listening and is "just spaced out." AR 353.

Plaintiff can concentrate for about an hour before "get[ting] spaced out." AR 350. Once that occurs, she would need to take a break of about thirty minutes before resuming any task. AR 351. Even once she resumes the task, Plaintiff can only concentrate for another thirty minutes or so. AR 351. She is able to bathe and dress herself, and while she takes Motrin for back pain, it does not affect her ability to function. AR 352.

Currently, Plaintiff's only source of income is Aid to Families with Dependent Children ("AFDC") as she has two boys at home, ages thirteen and sixteen. AR 351; *see also* AR 352-353. She is able to care for them with the assistance of her mother, her sister and her boyfriend. AR 351. Occasionally her cousin will also help. AR 351-352.

VE Cheryl Chandler was asked to consider a hypothetical worker of Plaintiff's age, education and work history, with no exertional or postural limitation, who was limited to simple, routine and repetitive work. The VE indicated such an individual could perform Plaintiff's past relevant work as a fast food worker, but not the stock work. AR 355.

---

[4] "PACT" refers to Fresno County's Psychiatric Assessment Center for Treatment.

[5] Plaintiff's sister does the grocery shopping because Plaintiff was at the grocery store on one occasion when "something triggered" her and she heard a voice telling her to hurt someone. AR 354-355.

Next, in a second hypothetical, the VE was asked to assume a hypothetical worker of Plaintiff's age, education and work history, without exertional or postural limitation, who could have only occasional contact with supervisors, coworkers, and the public. AR 355-356. The VE indicated such an individual could not perform Plaintiff's past relevant work, but that there were jobs in the regional or national economy that such a worker could perform. AR 356. Specifically, after reducing the available jobs by fifty percent, the VE indicated that such a worker could perform custodial duties, DOT[6] 381.687-018, medium and unskilled, with 60,000 available positions in California and nine to ten times that number available nationwide. AR 356. The VE also identified unskilled and medium cleaning occupations, representative DOT of 301.687-014, with 30,000 available jobs, and a grounds maintenance worker, unskilled and medium, DOT 403.667-010, with approximately 15,000 such jobs available. The VE verified that her testimony was in conformity with the DOT and that she had applied the fifty percent reduction to all three of the positions discussed.

In a third hypothetical, the VE was asked to assume the same factors as those present in second hypothetical question, with the additional limitation that the worker would have occasional problems maintaining attention, concentration and pace. AR 357. VE Chandler testified that such an individual could neither perform Plaintiff's past relevant work nor any other work. AR 357.

Finally, counsel for Plaintiff posed a hypothetical question as well, asking the VE to consider the same factors as those present in the ALJ's third hypothetical, with the additional limitation of an inability to show up to work at least one to two days out of a typical work week as the result of severe depression. The VE testified that all jobs would be eliminated for such an individual. AR 357-358.

**Medical Record**

The entire medical record was reviewed by the Court. AR 123-330. The medical evidence will be referenced below if necessary in this Court's decision.

---

[6] "DOT" refers to the Dictionary of Occupational Titles.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 18-25.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 29, 2006. AR 18. Further, the ALJ identified depression and post traumatic stress disorder as severe impairments. AR 18-19. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments do not, individually or in combination, meet or exceed any of the listed impairments. AR 19-20.

Based on his review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with a nonexertional limitation to no more than occasional contact with supervisors, coworkers or the public. AR 20-23.

Next, the ALJ determined that Plaintiff could not perform her past relevant work. AR 23. Nevertheless, based upon Plaintiff's age, education, work experience and RFC, the ALJ determined there were jobs that existed in significant numbers in the regional economy that Plaintiff could perform. Specifically, the ALJ found Plaintiff could perform the work of a custodian or janitor, cleaner, or grounds maintenance keeper. AR 24-25. Therefore, the ALJ determined Plaintiff was not disabled. AR 25.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993,

995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).

Here, Plaintiff argues that the ALJ erred by (1) failing to provide any reason to reject the mental limitations identified by the state agency doctor, and by (2) failing to articulate clear and convincing reasons to reject Plaintiff's subjective symptom testimony. (Doc. 13 at 7-12.)

## **DISCUSSION**

### A.   *State Agency Physician Opinion*

Plaintiff complains the "ALJ failed to include all of the limitations assessed by Dr. Johnson, nor did he provide any reason to reject them," thus, Plaintiff asserts the error requires this Court remand the matter for an award of benefits. (Doc. 13 at 7-9.)

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456. In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir.1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians . . .." *Magallanes*, 881 F.2d at 752. Rather, there

was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.

The opinions of nonexamining physicians are substantial evidence where they are supported by clinical findings and objective tests. *See Magallanes v. Bowen*, 881 F.2d at 751.

Here, the ALJ had but two acceptable medical opinions to consider: (1) that of a state agency medical consultant; and (2) that of a state agency psychiatric consultant. The ALJ was not rejecting a treating and/or examining physician's opinion in favor of the nonexamining physician's opinion. Therefore, the state agency psychiatrist's opinion can serve as substantial evidence if it is supported by clinical findings and objective tests.

ALJ Webster specifically found as follows:

> The State Agency psychiatric consultant determined the claimant had, at worst, moderate limitations on her ability to perform work activity (Exhibit 3F, pp. 1-3). The claimant testified that her worst problem was in dealing with other people. This statement from the claimant is consistent with the record as a whole. Therefore, I find the claimant has the work-related functional limitation of being precluded from more than occasional contact with supervisors, co-workers, or the public.

(AR 23.) A review of the Mental Residual Functional Capacity Assessment prepared by state agency psychiatrist G. F. Johnson on November 30, 2006, indicates that the doctor determined that Plaintiff was not significantly limited in the area of understanding and memory. AR 168. With regard to sustained concentration and persistence, the doctor determined she was not significantly limited with regard to her ability to carry out very short and simple instructions, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance, to sustain an ordinary routine without special supervision, to work in coordination with or in proximity to others without being distracted by them, and to make simple work-related decisions. AR 168-169. Dr. Johnson found Plaintiff to be moderately limited with regard to her ability to carry out detailed instructions and to maintain attention and concentration for extended periods. AR 168. In the area of social interaction, Dr. Johnson found Plaintiff would not be significantly limited in her ability to ask simple questions or request assistance, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and

maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. AR 169. The doctor found Plaintiff would be moderately limited in her ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors. AR 169. Finally, with regard to adaptation, Dr. Johnson found Plaintiff would be moderately limited only as to her ability to respond appropriately to changes in the work setting. AR 169. Other adaptation areas were not significantly limited. AR 169.

To the degree Plaintiff can be understood to argue that the ALJ was obligated to refer to each and every separate finding made by Dr. Johnson, Plaintiff is incorrect. The ALJ is not required to comment on every detail in every report. As noted in *Vincent v. Heckler*, 739 F.2d 1393, 1394-1395 (9th Cir. 1984), "[t]he Secretary . . . need not discuss all evidence presented to her. Rather, she must explain why 'significant probative evidence has been rejected.'" In fact, ALJ Webster provided a citation to the entire Medical Residual Functional Capacity Assessment and notes that "at worst, [there exist] moderate limitations on her ability to perform work activity." AR 23. Additionally, an ALJ need not believe everything a physician sets forth, and may accept all, some, or none of the physician's opinions. *Magallanes*, 881 F.2d at 753-754.

Plaintiff's assertion that "the ALJ changed the RFC of Dr. Johnson from moderate limitations to 'mild to moderate'" is not well taken. (Doc. 13 at 8.) Dr. Johnson in fact identified thirteen areas - out of a total of twenty - wherein Plaintiff is "not significantly limited." AR 168-169. Therefore, the ALJ's finding that Dr. Johnson's RFC opinion included both "mild to moderate" limitations is entirely proper. Those areas identified as "not significantly limit[ing]" can be properly characterized as "mild." Additionally, Plaintiff's citation to page twenty of the administrative record includes a partial discussion regarding the severity of Plaintiff's impairment and a partial discussion of the ALJ's RFC finding. The only reference to mild and/or moderate limitation on page twenty occurs in the discussion regarding the severity of Plaintiff's symptoms and the paragraph B criteria of Listing 12.04, rather than the RFC.

Lastly, Plaintiff argues that the ALJ's hypothetical question posed to the VE, asking her to "consider an individual with an 'occasional' limitation in concentration, persistence and pace," was erroneous because the ALJ effectively defined moderately limited as "occasional."

1  Moreover, the VE then indicated that such an individual could not perform work. (Doc. 13 at 9.)
2  Notably however, Plaintiff provides no authority for her assertion that a moderate limitation
3  could not properly be characterized as occasional. In fact, a restriction to simple, repetitive tasks
4  adequately captures deficiencies in concentration, persistence and pace. *Stubbs-Danielson v.*
5  *Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Thus, this Court finds no error in the ALJ's
6  hypothetical question as posed to the VE.

7  In her reply brief, Plaintiff makes a different argument: that because Dr. Johnson is a state
8  agency physician and the record does not include an opinion of a treating or examining physician,
9  the ALJ had a duty to obtain such an opinion. She relies upon *Penny v. Sullivan*, 2 F.3d 953, 958
10 (9th Cir. 1993) and *Mendoza v. Barnhart*, 436 F.Supp.2d 1110, 1116 (C.D. Cal. 2006). (*See*
11 Doc. 15.) Her argument is not persuasive.

12 When the medical evidence is ambiguous or "the record is inadequate" to allow for
13 proper evaluation of the evidence, the ALJ has a duty to develop the record. *Tonapetyan v.*
14 *Halter*, 242 F.3d 1144, 1150 (9th Cir.2001). The ALJ may discharge this duty in one of several
15 ways, including subpoenaing claimant's doctors, submitting questions to claimant's physicians,
16 continuing the hearing, or keeping the record open after the hearing to allow supplementation of
17 the record. *Id.* Here however, there was no need to obtain another report or opinion because the
18 record was neither ambiguous nor inadequate. The psychiatrists whom treated Plaintiff regularly
19 noted mental status examinations within normal limits. AR 369, 286, 286, 308-310. Simply
20 stated, neither Plaintiff's depression nor post traumatic stress disorder amount to a disabling
21 condition. As to Plaintiff's reliance upon *Penny v. Sullivan*, 2 F.3d 953 and *Mendoza v.*
22 *Barnhart*, 436 F.Supp.2d 1110, both are distinguishable from the present case. In each, there was
23 significant evidence of long standing and well documented impairment.

24 In sum, the ALJ's findings are supported by substantial evidence and are free of legal
25 error.

26     **B.**    ***The ALJ's Assessment of Plaintiff's Subjective Symptom Testimony***

27 Next, Plaintiff argues the ALJ erred by failing to offer clear and convincing reasons to
28 reject her subjective symptom testimony. (Doc. 13 at 9-12.)

11

A two step analysis applies at the administrative level when considering a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id*. at 1281-1282. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id*. at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007). "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment." *Orn v. Astrue*, 495 F.3d at 635 (citation omitted).

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Here, the ALJ found that Plaintiff had the severe impairments of depression and post-traumatic stress disorder. AR 18. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-1282.

"Despite the inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working." *Fair v. Bowen*, 885 F.2d at 601.  It is possible to suffer disabling pain even where the degree of pain is unsupported by objective medical findings. *Id*.  "In order to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision." *Id*. (citing *Magallanes v. Bowen*, 881 F.2d at 755).  The findings must convincingly justify the ALJ's rejection of the plaintiff's excess pain testimony. *Id*. at 602.  However, an ALJ cannot be required to believe every allegation of disabling pain.  "This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce some pain." *Id*. at 603.

ALJ Webster made the following findings:

> The claimant alleged symptoms that are far in excess of the level reasonably supported by the objective medical evidence in the record.  The claimant alleged in her testimony that she hears voices everyday, sees shadows, and that her depression symptoms are getting worse.  As well, she alleges that she is suicidal three to four times a week.  However, the objective medical evidence in the record is inconsistent with the claimant having such symptoms.  The degree of symptoms [] alleged by the claimant would normally require aggressive intervention and treatment.  However, the claimant started therapy with Fresno County Mental Health and was seeing a psychiatrist only sporadically for medication management services.
> In June 2007, the claimant reported having increased symptoms of depression and anxiety to her therapist at Fresno County Mental Health.  However, on July 3, 2007, the staff psychiatrist at Fresno County Mental Health noted that the claimant's mental status was essentially normal.  Subsequently, through July and August 2007, the claimant continued to report increasing symptoms of depression to her therapist.  However, I note that on July 17, 2007, the claimant was getting along well with her teacher from Fresno Adult School and she enjoyed the classes she was taking.  The claimant's allegations of increasing depression symptoms were inconsistent with the observations of the mental healthcare profession[als] and her own activities.
> The claimant's April 11, 2008 testimony is inconsistent with the documentary evidence in the record.  The claimant testified she last used drugs five or six years ago.  However, a letter from a therapist states the claimant was using drugs from April through June of 2006, less than two years prior to the date of the hearing.
> For the reasons given above, I find the claimant's statements about her symptoms and limitations are less than fully reliable.  Therefore, her testimony and allegations are given little evidentiary weight.

AR 21, internal citations omitted.

In short, the ALJ provided a number of reasons for concluding Plaintiff's subjective symptom testimony was less than credible: (1) the symptoms exceed those reasonably expected in light of the objective medical record evidence; (2) Plaintiff's symptoms are inconsistent with the medical evidence; (3) the symptoms are inconsistent with other documentary evidence in the record; (4) the treatment received is conservative; and (5) Plaintiff's symptoms are inconsistent with her daily activities. ALJ Webster clearly identified what testimony he found not credible and what evidence undermined Plaintiff's complaints. *Lester v. Chater,* 81 F.3d at 834. Furthermore, the reasons provided are acceptable. *See, e.g., Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (inconsistencies between the record and medical evidence supports a rejection of a claimant's credibility; no medical treatment or a conservative level of medical treatment has been found to suggest a lower level of pain and functional limitations); *Fair v. Bowen*, 885 F.2d at 603-04 (claiming severe conditions yet receiving minimal, conservative, or no treatment is a basis to reject claimant's testimony; additionally, failure to follow prescribed treatment can be considered in determining credibility); *see also* 20 C.F.R. § 416.929 (objective medical evidence can be used in determining credibility; SSR 96-7p (objective medical evidence is a useful indicator to assist in making a reasonable conclusion about credibility and the ability to function). Moreover, those reasons are supported by record. *See* AR 185-193, 269, 286, 296, 308-310, 319-326.

Plaintiff's reference to Plaintiff's "treating mental health professionals" (AR 10) is a reference to the opinion of Linda M. Lose, M.A., LMFT. However, Ms. Lose is considered to be an "other source" whose opinion the ALJ may give less weight than that of an acceptable medical source. 20 C.F.R. §§ 404.1513(d) & 416.913(d); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996) "Medical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists . . .." SSR 06-03p. It is clear that the ALJ considered the therapy records, however, Plaintiff's assertions that the ALJ should have given them greater weight is not persuasive.

1    Plaintiff complains the "ALJ rejected Ms. Melgoza's subjective complaints stating that
2 Ms. Melgoza gave inconsistent statements regarding her last drug use. However, Ms. Melgoza
3 cleared up this inconsistency . . .." (Doc. 13 at 11.) Plaintiff did in fact explain the
4 inconsistency, however, the Court notes her letter is dated July 2, 2008 - about two weeks *after*
5 the ALJ issued his findings. Furthermore, the letter is entitled "APPEAL" and is marked
6 "Exhibit AC," which this Court believes supports a reasonable inference that Plaintiff's effort to
7 clear up her inconsistent testimony was directed to the Appeals Council. As such, the alleged
8 error cannot be attributed to the ALJ.
9    Plaintiff asserts the "ALJ also rejected Ms. Melgoza's subjective complaints stating
10 repeatedly his erroneous conclusion that Ms. Melgoza kept discontinuing treatment. A.R. 20-
11 21." (Doc. 13 at 11.) Initially, the Court notes its review of the ALJ's findings at page twenty of
12 the administrative record reveals no reference to Plaintiff discontinuing treatment. At page
13 twenty-one, ALJ Webster stated "the claimant started therapy with Fresno County Mental Health
14 and was seeing a psychiatrist only sporadically for medication management services." AR 21.
15 This *single* reference does not amount to the repeatedly-stated "erroneous conclusion" of which
16 Plaintiff complains.
17    Finally, although evidence supporting an ALJ's conclusions might also permit an
18 interpretation more favorable to the claimant, if the ALJ's interpretation of evidence was rational,
19 as here, the Court must uphold the ALJ's decision where the evidence is susceptible to more than
20 one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). Thus,
21 because there is evidence to support the ALJ's conclusion, even were one of the ALJ's reasons
22 erroneous or improper, the decision should be upheld. *See eg., Batson v. Barnhart*, 359 F.3d
23 1190, 1197 (9th Cir. 2004) (upholding ALJ's credibility determination even though one reason
24 may have been in error).

## **CONCLUSION**

26    Based on the foregoing, the Court finds that the ALJ's decision is supported by
27 substantial evidence in the record as a whole and is based on proper legal standards.
28 Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Sylvia Melgoza.


IT IS SO ORDERED.

  Dated:  **July 25, 2011**       **/s/ Gary S. Austin**
                    UNITED STATES MAGISTRATE JUDGE